# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE, and BILL
NELSON FOR U.S. SENATE,

|  |  |
|---|---|
| Plaintiffs, | Case No._____ |
| v. | |

KENNETH W. DETZNER, in his official
capacity as Florida Secretary of State, the
FLORIDA ELECTIONS CANVASSING
COMMISSION, and RICK SCOTT,
PAMELA BONDI, and JIMMY
PATRONIS, in their official capacity as
members of the Florida Elections
Canvassing Commission

Defendants.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs the DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE ("DSCC") and BILL NELSON FOR U.S. SENATE ("Nelson Campaign") (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this COMPLAINT FOR INJUNCTIVE AND DECLARATORY

1

RELIEF against Defendants KENNETH W. DETZNER, in his official capacity as Florida Secretary of State, the FLORIDA ELECTIONS CANVASSING COMMISSION, and RICK SCOTT, in his official capacity as member of the Florida Elections Canvassing Commission ("Defendants"), and allege upon information and belief as to all others as follows:

<u>**NATURE OF THE CASE**</u>

1.     Plaintiffs bring the instant lawsuit, on an emergency and expedited basis, to protect the fundamental constitutional right and to prevent the disenfranchisement of thousands of Florida voters at risk of disenfranchisement in the 2018 general election if the upcoming recount and certification deadlines are not tolled until this matter can be heard and relief can be granted.

2.     Multiple elections in Florida hang in the balance. As of the filing of this lawsuit, the two major party candidates for U.S. Senator, Senator Bill Nelson and Governor Rick Scott, are separated by a mere .15%. Two other statewide races—for governor and state agricultural commissioner—remain uncalled.

3.     A machine recount of these three races is currently underway. Local canvassing boards throughout the State of Florida (the "State") must complete the machine recount no later than 3 p.m. on Thursday, November 15. By no later than

2

noon on Sunday, November 18, local canvassing boards must complete a manual recount of any race where the margin after the machine recount is less than .25%.

4.     A manual recount of the Senate race is, at this point, an inevitability.

5.     Given the extraordinarily compressed deadlines for completing a recount and the large number of races currently subject to machine recount, local election officials are faced with a difficult task. Unsurprisingly, officials in one of Florida's largest counties—Palm Beach—have already indicated that it may be impossible to complete a machine recount for all outstanding races by the deadline of Thursday at 3 p.m. It also appears that it will be impossible for Palm Beach County, at the least, to complete a manual recount for the Senate race by the deadline of noon on Sunday.

6.     Under Florida law, if a local canvassing board fails to timely complete and report the results of a machine and/or manual recount, the State reverts back to previously reported totals.

7.     Unless the relief sought by Plaintiffs is granted, the State's recount and certification deadlines will force local canvassing boards to unconstitutionally reject the ballots cast by Floridians that were improperly rejected on Election Night due to voting machine error and that would be counted in a machine or manual

recount. Because only some counties—given their size or other relevant factors—will be unable to meet the deadlines, voters will either have their vote counted during a recount or rejected based on the accident of where they reside.

8.    Arbitrary application of an unreasonable deadline violates the prohibition against undue burdens on the right to vote, enshrined under the First and Fourteenth Amendments to the U.S. Constitution, and subjects Florida voters to disparate treatment and inconsistent standards in violation of the Fourteenth Amendment's Equal Protection Clause.

## JURISDICTION AND VENUE

9.    Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

10.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

11.    This Court has personal jurisdiction over Defendants, who are sued in their official capacities only.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because a

4

substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

13.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14.     Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Florida. The DSCC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Senate. In 2018, the DSCC has made substantial contributions and expenditures to support the Democratic candidate for U.S. Senate in Florida, Bill Nelson. Florida's adoption of arbitrary and unrealistic deadlines for completion of a recount harms the DSCC by frustrating its mission of, and efforts in, electing the Democratic Party candidate to the U.S. Senate in Florida by giving an unfair and artificial electoral advantage to the Republican Party candidate.

5

15.    Plaintiff BILL NELSON FOR U.S. SENATE is a duly organized political campaign in support of Bill Nelson's election to the United States Senate, representing the State of Florida.

16.    Defendant KEN DETZNER is sued in his official capacity as Secretary of State of the State of Florida. Defendant Detzner is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is therefore responsible for the administration of state laws affecting voting, including with respect to the general election on November 6, 2018. As Secretary of State, Defendant Detzner's duties consist of, among other things, "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws." Fla. Stat. § 97.012(1). The Secretary of State is also tasked with ensuring that county supervisors . . . perform their . . . statutory duties, *see id.* § 97.012(14), is responsible for providing technical assistance to county supervisors on voter education, election personnel training services, and voting systems, *see id.* §§ 97.012(4), -(5), and is responsible for ordering that recounts be conducted, *id.* §§ 102.147(7), 102.166(1).

17.    Defendant FLORIDA ELECTIONS CANVASSING COMMISSION is responsible for certifying the results of the returns of the election for each federal, state,

and multicounty office, Fla. Stat. § 102.111, and issuing a certificate of the result of the election for federal and state officers, Fla. Stat. 102.121.

18.    Defendants RICK SCOTT, PAM BONDI, and JIMMY PATRONIS are sued in their official capacity as members of the Florida Elections Canvassing Commission. Defendants Scott, Bondi, Patronis are persons within the meaning of 42 U.S.C. § 1983 and acts under color of state law. In their official capacity, Defendants Scott, Bondi, and Patronis are responsible for, among other things, certifying the results of the returns of the election for the office of U.S. Senator and issuing a certificate of the result of the election for such office.

## STATEMENT OF FACTS AND LAW

**A.    Overview**

19.    On November 6, 2018, Florida held a general election. Among other races on the ballot was the office of U.S. Senator. The Democratic candidate is Senator Bill Nelson. The Republican candidate is Governor Rick Scott. Well more than 8 million votes were cast for U.S. Senator.

20.    Under Florida law, local canvassing officials must report election results "no later than noon on the fourth day after any general or other election." Fla. Stat. § 102.147(5). These returns are, however, "unofficial." *Id.* This is because the original, "unofficial" returns invariably do not include every vote

validly cast in the election.

21.     Sometimes, the "unofficial" returns may contain a "counting error," which local election officials must correct. *Id.* Other times, validly cast votes are not included in the original unofficial results because of voting machine error, such as failure of the machine to read a voter's marking of the ballot correctly. Florida law provides for a recount process to address and correct these voting machine errors when the results of a close election hang in the balance.

**B.     The Machine Recount Process**

22.     The first step in the process is a machine recount. If the "unofficial" returns filed by the county canvassing boards by the fourth day after the election (here, Saturday, November 10, 2018) reflect that a candidate lost by one-half percent or less of the votes cast for the office, "a recount shall be ordered of the votes cast with respect to such office." Fla. Stat. § 102.141(7).

23.     The specific way a machine recount proceeds depends on the kind of technology used. Fla. Stat. § 102.141(7)(a); Fla Admin Code r. 1S-2.031(4)(e)(1).

24.     Of critical importance here, in jurisdictions where automatic tabulating machines are used, some ballots validly cast by voters are not counted in the machine recount.

25.     Where a ballot has been physically damaged such that it cannot be

8

counted using the automatic tabulating equipment during the recount, a duplicate ballot is made. Fla. Stat. § 102.141(7)(a).

26.    Where the automatic tabulating equipment detects *more than one vote* for a given office (an "overvote") or *no* vote for a given office (an "undervote"), those ballots are simply set aside—ignored unless a manual recount occurs. Fla. Admin Code r. 1S-2.031(4)(b)(3), (c)(3); Fla. Stat. § 102.166(1), (2)(b). *Only* in a manual recount will the votes improperly rejected as undervotes or overvotes be counted.

27.    A canvassing board required to conduct a machine recount must file a second set of unofficial returns reflecting the result of the recount no later than 3 p.m. on the 9th day after the election (here, Thursday, November 15). Fla. Stat. § 102.141(7)(c).

**C.    The Manual Recount**

28.    If the second set of unofficial returns—those following a machine recount—indicate that the margin between candidates is one-quarter of a percent or less of the votes cast for the office "a manual recount of the overvotes and undervotes cast in the entire geographic jurisdiction of such office . . . shall be ordered" unless "[t]he number of overvotes and undervotes is fewer than the number of votes needed to change the outcome of the election." Fla. Stat. §

102.166(1). The Secretary of State is responsible for ordering the manual recount. *Id.* § 102.166(1)(b).

29.     The purpose of the manual recount is twofold. First, with regard to jurisdictions using automatic tabulation equipment, overvotes and undervotes are reviewed to determine if the voter, in fact, "made a definite choice for" a given office following the standards set out in Florida law. Fla. Stat. § 102.166(5)(b); Fla. Admin Code r. 1S-2.031(5)(c)(3). Similar procedures govern the manual recount in jurisdictions using touchscreen ballot technology, which does not permit the possibility of overvotes, but which may generate undervotes that must be reviewed during a manual recount. Fla. Admin. Code r. 1S-2.031(5)(e)(1).

30.     Second, where it was necessary to create a duplicate ballot during the machine recount, the duplicate is compared to the original "to ensure the correctness of the duplicate." Fla. Stat. § 102.166(5)(b).

31.     This lawsuit primarily concerns one final aspect of the recount process. Under Florida law, the manual recount does *not* necessarily proceed until it is finished. Rather, Florida requires each county canvassing board to submit official returns no later than noon on the 12th day following the election (here, Sunday, November 18). County canvassing boards are duty bound to certify that

10

they have "compared the number of persons who voted with the number of ballots counted and that the certification includes all valid votes cast in the election." Fla. Stat. § 102.112(1).

32.     Where a county canvassing board remains in the midst of a manual recount, it obviously cannot truthfully make out such a certification. Florida's "solution" appears to be to disenfranchise voters whose votes remain uncounted in the name of administrative convenience. Rather than defer the certification deadline until the completion of the recount, the Department of State is instead compelled to "ignore" a county's returns and use whatever returns it then has on file for that county. Fla. Stat. § 102.112(3). In other words, the Department of State must pretend that the manual recount was not in process and disregard the valid votes identified and counted for the first time in that manual recount.

33.     The Department of State then provides the official returns to the Florida Elections Canvassing Commission. The Elections Canvassing Commission must meet at 9 a.m. on the 14th day after a general election to certify the returns of the election for each federal, state, and multicounty office. Fla. Stat. § 102.111. In exercising this authority, the Elections Canvassing Commission "shall not have authority to look beyond the county returns." Fla. Stat. § 102.131.

11

**D.      Unsurprisingly, at Least One Florida County Is Likely to Be Unable to Count and Recount Hundreds of Thousands of Ballots by Machine and Hand for Multiple Races in a Week**

34.      The Secretary of State has declared a machine recount for three statewide elections (U.S. Senator, Governor, and Agriculture Commissioner). In addition, some local races have gone to a machine recount, such as State House District 89 in Palm Beach County.

35.      As of the date this Complaint is filed, the margin in the U.S. Senate race is .15%—well within the margin triggering a manual recount. The Secretary of State is expected to order that a manual recount will be conducted because the number of overvotes and undervotes will exceed the margin between the two top candidates for the U.S. Senate. Indeed, news reports suggest that there could be more than 125,000 overvotes and undervotes in the Senate race.

36.      The deadlines set out in Florida law are extraordinarily compressed. The impact of those deadlines falls disparately on different counties based on the volume of votes they must count and the technology available to them to do so. For example, a series of technical issues in Broward County delayed the recount of more than 700,000 ballots from even starting.

37.      Indeed, election officials in at least one Florida county—Palm Beach County—have stated that the county likely will not complete the machine recount

for at least some of the races before it by the Thursday deadline.

38.     Counties can only use voting equipment that has been approved by the State. *See* Fla. Stat. § 101.5605.

39.     Because of the limited number of automatic tabulation machines and the technological limitations of the machines available for its use, Palm Beach County can only recount one race at a time. In its unofficial election returns, Palm Beach reported that the top two candidates—Governor Scott and Senator Nelson—received a combined 585,117 votes, all of which must be re-run through the voting machines.

40.     The Elections Supervisor for Palm Beach County, Susan Bucher, has suggested that Palm Beach County will not be able to recount hundreds of thousands of ballots four separate times so as to complete the machine count of all four races subject to recount in that county, although it *may* be able to finish the machine recount of the Senate race. However, late on November 12, a lawsuit was filed by one of the candidates in Florida House District 89 seeking, among other things, to compel Palm Beach County to count ballots in *that* race first, which would mean that the machine count for the Senate race would *not* be timely completed by the 3 p.m. deadline on November 15.

41.     Meanwhile in Broward County, it appears that there may be roughly

25,000 undervotes. It remains unclear whether it will be possible for election officials to assess every undervote and overvote in the—at most—69 hours between the deadlines for completing the machine and manual recounts.

42.     It thus appears that at least Palm Beach County, and quite possibly others, will be unable to complete the manual recount by the deadline of noon on Sunday. As a result, valid votes cast by Floridians for the office of U.S. Senator which were improperly rejected as "overvotes" or "undervotes" will not be counted and these voters will be disenfranchised through no fault of their own.

## CLAIMS FOR RELIEF

### COUNT I

**First Amendment and Equal Protection
U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
*Undue Burden on the Right to Vote*

43.     Plaintiffs incorporate by reference and reallege paragraphs l to 42 of this Complaint.

44.     Under the Equal Protection Clause, a State cannot utilize election practices that unduly burden the right to vote. The practices outlined above impose a severe burden—disenfranchisement—on the right to vote of the voters who cast ballots that have thus far been improperly rejected and will only be counted accurately if both a machine and manual recount are

14

completed. Rejecting these voters' ballots based solely on the fact that (a) a voting machine improperly rejected their ballots and (b) a Florida county cannot logistically complete a machine and/or manual recount by the arbitrary deadlines imposed by state law does not serve any legitimate, let alone compelling, state interest, particularly where the State has already otherwise verified their eligibility to vote.

45.    Thousands of eligible, registered Florida voters will suffer direct and irreparable injury if Defendants refuse to count their ballots. Without relief from this Court, these voters will be deprived of their right to have their vote counted in the November election.

46.    Based on the foregoing, Defendants, acting under color of state law, will deprive Plaintiffs and the voters they represent of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## COUNT II

### Equal Protection
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983

47.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 46, as though fully set forth herein.

48.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

49.     Here, as applied to the circumstances presented, the application of the deadlines for completing the recount process and certifying the official election results will subject similarly situated voters to differing standards based on their county of residence.

50.     Voters who cast valid votes and reside in a county that is logistically capable of completing the recount process—including a manual recount—will have their vote for Senator counted, even if it was originally rejected as an "overvote" or "undervote" or for some other reason. By contrast, similarly situated voters who reside in a county that is unable to complete the recount by the applicable deadlines will have their vote left uncounted. Fla. Stat. § 102.112(3).

16

51.     The requirement that election results must be certified to the

Department of State no later than November 18 by noon—regardless of whether it

is possible for counties to complete the recount process required by state law—

does not further any legitimate state interest, much less a compelling state interest

narrowly tailored, that is sufficiently weighty to justify the disparate treatment of

voters.

52.     Injunctive and declaratory relief is needed to protect these disparately

impacted voters from total disenfranchisement, and in the absence of such relief,

Plaintiffs, their members, constituencies, and the voters who support them, will be

subjected to serious, concrete, and irreparable injuries due to disparate treatment in

violation of the Equal Protection Clause in the 2018 general election.

**PRAYER FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**
**28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and  65**

53.     This case presents an actual controversy because the existing

deadlines for completion of a machine and/or manual recount will result in the

disenfranchisement of voters who associate with Plaintiffs, and this serious and

immediate harm warrants the issuance of a declaratory judgment.

54.     Plaintiffs seek preliminary and/or permanent injunctive relief to

protect their constitutional rights and avoid the injuries described above. A

favorable decision enjoining Defendants would redress and prevent the irreparable injuries to Plaintiffs and their members, constituents, and supporters identified herein, for which Plaintiffs have no adequate remedy at law or in equity.

55.    The State will incur no burden if every county completes the recounts required by state law, even if they do so some time after the existing deadlines.

56.    The public interest weighs strongly in favor of letting every lawful, eligible voter exercise the right to vote.  The balance of hardships thus tips strongly in favor of Plaintiffs.

57.    Plaintiffs file, concurrent with this Complaint, an emergency motion for a preliminary and/or permanent injunctive relief in accord with Local Rule 7.l(L), as the deadline for completion of the machine recount is 3 p.m. on November 15 and the deadline for completion of the manual recount is noon on November 18. It is essential that the motion be decided before these deadlines pass for the relief requested to be effective such that voters whose ballots have been improperly rejected to date are not disenfranchised.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.    Declaring that all counties in Florida must be afforded an opportunity to complete the machine and manual recount processes set out in Florida Revised Statute Section 102 and its implementing regulations

18

and certify official returns under Fla. Stat. § 102.112(1) including the

results of such recount(s), notwithstanding any deadlines imposed by

Florida law, including Fla. Stat. §§ 102.141(7)(c) and 102.112(2).

B.   Preliminarily and permanently enjoining enforcement of Fla. Stat. §§

102.112(2) and (3) to the extent these provisions purport to require

Defendant Detzner and/or the Department of State from refusing to

accept official returns from a county canvassing board for the 2018

General Election.

C.   Preliminarily and permanently enjoining Defendant Florida Elections

Canvassing Commission and/or Defendants Scott, Bondi, and Patronis

from taking any action to certify the results for the office of U.S. Senate

where fewer than all counties that are engaged in a recount have

completed a machine and manual recount, including, but not limited to,

certifying county returns pursuant to Fla. Stat. § 102.111.

D.   Temporarily tolling and restraining the deadline for completion of the

machine recount set out by Fla. Stat. §102.141(7)(c) and the

certification deadlines set out in Fla. Stat. § 102.111 and Fla. Stat.

§ 102.112 until *after* this matter is heard;

E.   Permanently tolling and restraining the deadline for completion of the

machine recount set out by Fla. Stat. §102.141(7)(c) and the

certification deadlines set out in Fla. Stat. § 102.111 and Fla. Stat.

§ 102.112 to provide each county with sufficient time to count ballots

that would otherwise have been rejected in the absence of a completed

manual and/or machine recount;

F.     Awarding Plaintiffs their costs, expenses, and reasonable attorneys'

fees pursuant to, *inter alia,* 42 U.S.C. § 1988 and other applicable

laws; and

G.     Granting such other and further relief as the Court deems just and

proper.

Dated: November 13, 2018

Respectfully submitted,

_____/s/_____
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email: jblohm@meyerbrookslaw.com
RONALD G. MEYER
Florida Bar No. 0148248
Email: rmeyer@meyerbrookslaw.com
MEYER, BROOKS, DEMMA AND
BLOHM, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

Marc E. Elias
Email: MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

Counsel for Plaintiffs