**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE and BILL NELSON FOR U.S. SENATE,

Plaintiffs,

v.

KEN DETZNER, in his official capacity as Florida Secretary of State, FLORIDA ELECTIONS CANVASSING COMMISSION, and RICK SCOTT, PAMELA BONDI, and JIMMY PATRONIS, in their official capacities as members of the Florida Elections Canvassing Commission,

Defendants,

and

NATIONAL REPUBLICAN SENATORIAL COMMITTEE

Intervenor-Defendant.

No. 4:18-cv-00528-MW-MJF

**INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTIVE RELIEF TO EXTEND CERTIFICATION DEADLINES**

Intervenor the National Republican Senatorial Committee, by and through its undersigned counsel, hereby opposes the request for injunctive relief filed by Plaintiffs Democratic Senatorial Campaign Committee ("DSCC") and Bill Nelson for U.S. Senate (collectively, "Plaintiffs"). In support of its Opposition, Intervenor states as follows:

**INTRODUCTION**

Plaintiffs claim that the Court must set aside Florida's democratically established electoral processes or "administrative deadlines will be prioritized over the constitutional right to vote." Mem. at 3. Plaintiffs could not be more wrong. The constitutional right to vote is not at stake. Plaintiffs nowhere contend that anyone was unable to vote during the general election on November 6. Instead, Plaintiffs claim that certain under voter and over votes might not be counted without sufficient time for Florida's recount process to run to full completion in every county in the state. The fundamental problem with Plaintiffs' argument is that there is no constitutional right to a recount, which explains why Plaintiffs have not cited a single example of any court granting the extraordinary remedy Plaintiffs seek from this Court.

What the Constitution does say about this case cuts strongly against Plaintiffs. The Elections Clause of Article I gives the Florida Legislature broad discretion over the manner in which it canvasses and certifies election results for

federal elections—including discretion over whether to hold a recount at all and under what conditions. Nothing about Florida's recount procedures places an unconstitutional burden on the right to vote.

Nor does this case involve mere "administrative deadlines." The deadlines Plaintiffs challenge come from statutes codified in the Florida Election Code and adopted directly in accordance with the delegated powers under the Elections Clause of the U.S. Constitution. Those deadlines have been in place for over a decade. And they are necessary to ensure that election disputes in Florida are resolved before the time the Florida Constitution requires the newly elected Florida Legislature to convene, fewer than 48 hours after the final deadline for submission of results by the counties to the Florida Election Canvassing Commission. Contrary to what Plaintiffs suggest, the deadlines are not arbitrary; they are reasonable, nondiscriminatory laws designed to ensure the orderly conduct of elections.

Plaintiffs are correct that this case is about "the integrity of the election process," and that "[w]hen people lose faith in the integrity of the election process, faith in democracy is undermined." Mem. at 2. But the relief Plaintiffs request—a thirteenth-hour federal court injunction setting aside unambiguous state election laws—will only erode the integrity of the democratic process. The Court should reject Plaintiffs' call to intervene in this election, adhere to "the proper—and

properly limited—role of the courts in a democratic society," and deny Plaintiffs' motion. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018).

## BACKGROUND

### A. Legal Background

**Federal and Florida Constitutions:** The federal Constitution's Elections Clause gives the legislature of each State the authority to "prescribe[]" the "Times, Places, and Manner of holding Elections for Senators." U.S. Const. art. I, § 4. The Supreme Court has recognized "the bre[a]dth of those powers." *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972). The Elections Clause's "comprehensive words embrace the authority to provide a complete code for congressional elections." *Id.* (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). This authority extends "not only as to times and places," but also reaches "supervision of voting, protection of voters, prevention of fraud and corrupt practices," and relevant here, the "counting of votes, duties of inspectors and canvassers, and the making and publication of election returns." *Id.* (quoting *Smiley*, 285 U.S. at 366). Importantly, whether a State decides to include a "recount … is within the ambit of the broad powers delegated to the States by Art. I, s 4." *Id.*

The Florida Constitution likewise establishes the Florida Legislature's obligations to safeguard and regulate the State's electoral process. *See* Fla. Const. art. VI, § 1, ("[E]lections shall … be regulated by law.").

Separately, the Florida Constitution directs that the Florida Legislature "shall convene for the exclusive purpose of organization and selection of officers" on the "fourteenth day following each general election." Fla. Const. art. III, § 3.

**Florida Election Code:** Based on its federal and State constitutional authority, the Florida Legislature has enacted Chapters 97 through 106 of the Florida Statutes (the "Florida Election Code" or "Code"). *See* Fla. Stat. § 97.011.[1] Chapters 101 and 102 of the Code establish the procedure and deadlines for canvassing ballots after an election, including if a machine and/or manual recount is required due to the margin in the initial election returns.

Owing to the importance of elections regulations, the Florida Legislature has frequently revisited these procedures and deadlines. In 2001, the deadline for the "first unofficial returns" was 17 hours after the polls closed on Election Day, and the deadline for the "second unofficial returns" (made after a machine recount) was 24 hours later. Ch. 2001-40, § 41, Laws of Fla. The Florida Legislature has amended those deadlines three times since—the deadline is now 89 hours for the first unofficial returns, and election officials have an another 123 hours to report the second unofficial returns. Ch. 2007-30, § 33, Laws of Fla.; *see also* Ch. 2002-

[1] Pursuant to authority granted to the Secretary of State in Section 97.012(1), the Florida Department of State has also adopted numerous rules specifically governing the conduct of elections. For example, Rule 1S-2.031 of the Florida Administrative Code governs and establishes "Recount Procedures."

17, § 20, Laws of Fla. (2002 amendments); Ch. 2005-277, § 58, Laws of Fla. (2005 amendments). The Florida Legislature made technical amendments to the Election Code in May 2018, but the substantive procedures and deadlines were last altered in 2007. Candidates, voters, and elected officials have been operating under these procedures and deadlines for more than a decade.

The Election Code establishes a comprehensive process for canvassing and reporting election returns. For a general election, the first unofficial returns must be submitted to the Secretary of State by "noon on the fourth day" following the election. *See* Fla. Stat. § 102.141(5). Because this year's election was on Tuesday, November 6, the first unofficial returns were due by noon on Saturday, November 10.

The Election Code directs that if the first unofficial returns show a margin of victory in any race of one-half of one percent or less, the Secretary must order a machine recount of votes in that race. *See* Fla. Stat. § 102.141(7). Those machine-recounted returns—the second unofficial returns—are due to the Secretary by "3 p.m. on the 9th day" following the election. *See* Fla. Stat. § 102.141(7)(c). Because the U.S. Senate race and several other races this year were within the one-half percent range, the Secretary ordered machine recounts in accordance with this timeline. The second, machine-recounted unofficial returns are due Thursday,

November 15 at 3 p.m. *See* Secretary of State Orders on Conduct of Machine Recount, https://floridaelectionwatch.gov.

The Election Code expressly addresses what happens if the machine recount cannot be completed by 3 p.m. on the 9th day:

> If the canvassing board is unable to complete the recount prescribed in this subsection by the deadline, the second set of unofficial returns submitted by the canvassing board shall be identical to the initial unofficial returns and the submission shall also include a detailed explanation of why it was unable to timely complete the recount.

Fla. Stat. § 102.141(7)(c). In other words, if any county cannot complete the required machine recount for any race by Thursday, November 15 at 3 p.m., then that county's first unofficial returns for that race will become its second official returns. No county is disenfranchised; the county's first unofficial returns stand and are presumed correct.

The Election Code also provides for a "hand recount" of certain ballots when "the second set of unofficial returns … indicates that a candidate for any office was defeated or eliminated by one-quarter of a percent or less of the votes cast for such office." Fla. Stat. § 102.166(1). A hand recount examines only "overvotes" and "undervotes": ballots on which a voter marked more than one candidate for an office, or failed to mark any candidate for an office. *See* Fla. Admin. Code r. 1S-2.031(f), (j). The hand recount of overvotes and undervotes will not proceed if the candidate facing defeat waives the recount or the number of

undervotes and overvotes could not change the outcome of the election. Fla. Stat. § 102.166(1).

Notwithstanding any pending recounts (whether by machine or by hand), the Election Code provides that official returns are due by noon on 12th day following the general election. *See* Fla. Stat. § 102.141(7)(c) ("[T]he canvassing board shall complete the recount prescribed in this subsection, along with any manual recount prescribed in s. 102.166, and certify election returns in accordance with the requirements of this chapter."); *id.* § 102.112(2) ("Returns must be filed … by noon on the 12th day following the general election."). Here, that date is Sunday, November 18.

The Code provides clear instruction to the Secretary regarding what he or she must do if any county canvassing board fails to certify official election returns by noon on the 12th day: "[i]f the returns are not received by the department by the time specified, such returns shall be ignored and the results on file at that time shall be certified by the department." *See* Fla. Stat. § 102.112(3); *see also* Fla. Admin. Code r. 1S-2.031(2)(c) ("All recounts conducted pursuant to this rule must be completed in such a manner as to provide the canvassing board sufficient time to comply with the provisions of Section 102.112, F.S.").

The only exception to this unambiguous deadline is if a county canvassing board cannot timely send official returns to the department due to an "emergency."

*See* Fla. Stat. § 102.112(4). The Florida Election Code narrowly defines an "emergency" as "any occurrence, or threat thereof, whether accidental, natural, or caused by human beings, in war or in peace, that results or may result in substantial injury or harm to the population or substantial damage to or loss of property to the extent it will prohibit an election officer's ability to conduct a safe and orderly election." Fla. Stat. § 101.732(3). No such emergency exists here.

Accordingly, no matter the status of any recount, by machine or by hand, the returns on file with the Secretary will become the certified returns at noon on Sunday, November 18. Less than 48 hours later, the newly elected Florida Legislature will convene as required by the Florida Constitution. *See* Fla. Const. art. III, § 3.

The Florida Election Code provides an additional post-certification remedy. "Within 10 days of the certification of the returns, either an "unsuccessful candidate" or a "taxpayer" may seek to "set aside the result of the election" based on several enumerated grounds. *See* Fla. Stat. § 102.168(1)–(3). The defendant must file a response "[w]ithin 10 days" and the dispute is given "an immediate hearing." Fla. Stat. § 102.168(6)–(7).

**B. Factual and Procedural Background**

Plaintiffs identify no way in which the Secretary or other Florida election officials have failed to follow the Florida Election Code. A general election was

held on Tuesday, November 6. The Secretary received the first unofficial returns by noon on Saturday, November 10. Shortly thereafter, the Secretary ordered a machine recount in the race for U.S. Senate as well as in several other races. As of the time of this filing, that machine recount is ongoing. Plaintiffs claim that certain election officials have stated that the recount will not be finished by 3 p.m. on Thursday, November 15. If that is so, then the first unofficial results (received on Saturday, November 10) will become the second unofficial results. And if a manual recount is triggered by those results, it will begin immediately after it is ordered by the Secretary.[2]

Plaintiffs sued the Secretary and various election officials on Tuesday, November 13 seeking a preliminary injunction or a temporary restraining order directing the Secretary and other officials to refrain from following the statutory deadlines of the Florida Election Code. ECF No. 1. Among other things, Plaintiffs seek an order "preclud[ing]" the Secretary and other election officials "from taking any action to certify the results for the office of U.S. Senate until all counties in

---

[2] Even if a machine recount is completed by the deadline, the second set of unofficial results are not expected to materially differ from the first unofficial results. As of 8:37 p.m. on November 14, upon information and belief, 50 of 67 counties had completed the machine recount in the Senate race with 48.84% of the ballots totaling more than 8 million votes, with a net change of 51 votes in the U.S. Senate race.

Florida complete the machine and manual recount process set out above and certify the official returns under Fla. Stat. § 102.112(1)." Mot. at 3.

**ARGUMENT**

Plaintiffs fall far short of satisfying the standard for the "extraordinary and drastic remedy" of a preliminary injunction. *See Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *5 (N.D. Fla. Oct. 16, 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). As Plaintiffs note, Mem. at 13, the "party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). "To obtain such relief, the moving party must show (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015); *see also United States v. Florida*, 870 F. Supp. 2d 1346, 1348 (N.D. Fla. 2012) (same standard for temporary restraining order).

For two reasons, Plaintiffs cannot meet this high bar. First, Plaintiffs fail to show a likelihood of success on the merits. Neither Plaintiffs' right-to-vote argument nor their equal-protection argument has merit. Florida's recount

deadlines do not place any burdens on the right to vote. Instead, they constitute reasonable and nondiscriminatory regulations of the manner of holding elections and the legislatively enacted but not constitutionally required procedure for recounts. Second, Plaintiffs fail to show the other requirements necessary to obtain the extraordinary relief they seek. Plaintiffs cannot show an irreparable injury because they have suffered no injury at all. Further, the relief they request—federal court intrusion into Florida's democratic processes—would severely harm the State of Florida and its election officials. The public interest would be best served by permitting Florida's election process to operate the way that Floridians, acting through their elected representatives, designed it to operate.

**A. Plaintiffs Fail To Show A Likelihood Of Success On Merits.**

**1. The Recount Deadlines Do Not Place An Unconstitutional Burden On The Right To Vote.**

Plaintiffs' first argue that Florida's recount deadlines amount to a direct "denial of the right to vote" and thereby impose a "severe" and unconstitutional burden on that right. Mem. at 14–17. This argument fails for a fundamental, threshold reason: the constitutional right to vote does not include the right to a recount. As the Supreme Court has held, whether to include a "recount is … within the ambit of the broad powers delegated to the States by Art. I, s 4." *Roudebush v. Hartke*, 405 U.S. 15, 24–25 (1972). Numerous courts have likewise recognized that "the right to have one's vote counted does not … encompass the right to have

one's vote verified through a mandatory statewide recount." *Stein v. Cortes*, 223 F. Supp. 3d 423, 438 (E.D. Pa. 2016); *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) ("Plaintiffs have not shown … that an individual citizen has a federal constitutional right to a recount.").

There is no federal constitutional right to a recount because "[t]here is no principled ground on which a court could say that although rules for establishing districts and determining the eligibility of voters rest on state law, rules for counting ballots rest on federal law." *McIntyre v. Fallahay*, 766 F.2d 1078, 1085 (7th Cir. 1985). "All of these issues are covered by Art. I, sec. 4, cl. 1." *Id.* "A state with the power to hold elections must have rules for counting the ballots." *Id.* "These rules apply to the count on election day, when they govern local, state, and federal offices." *Id.* "They [also] apply to the recount." *Id.* (citing *Roudebush*, 405 U.S. at 25). In short, a recount is a matter of legislative grace—it can be extended, extended with conditions (such as deadlines), or not extended at all. Indeed, the Supreme Court's decision in *Bush v. Gore*, on which Plaintiffs extensively rely, underscores that recounts are not constitutionally required. There, the Court terminated the Florida recount then underway, effectively ordering the certification of the results as determined before the recount. 531 U.S. 98, 110 (2000).

For this reason, the decisions Plaintiffs cite are inapposite. Those decisions deal with actual denials of the right to vote—that is, the right to cast a vote and

have it counted in the first instance according to the state's established procedures. None of Plaintiffs' cases involved a recount, is no more than a mechanism to verify the initial count. Plaintiffs principally rely on *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016). There, the question was whether Florida had to extend its voter-registration deadline because of the emergency circumstances created by a hurricane. *Id.* at 1256–57. The Court held that an extension was warranted because "Hurricane Matthew foreclosed the only methods of registering to vote" for "literally in excess of hundreds of thousands" of people. *Id.* at 1257. Plaintiffs also rely on *Georgia Coalition for the Peoples' Agenda, Inc.*, but that case also involved exigent circumstances due to Hurricane Matthew. 214 F. Supp. 3d 1344 (S.D. Ga. 2016). Like this Court, the court in *Georgia Coalition* held that "mandatory evacuations imposed due to Hurricane Matthew" prevented voters from registering, and it ordered a one-week extension of the registration deadline. *Id.* at 1345.

The other decisions Plaintiffs rely on are similar—they all involve extenuating circumstances in which voters were unable to cast their ballots. *See Doe v. Walker*, 746 F. Supp. 2d 667, 678–80 (D. Md. 2010) (military voters stationed abroad might have no change to submit timely absentee ballot in light of the late date the ballot was mailed and the extended time needed to send mail through military system); *In re Holmes*, 788 A.2d 291, 294 (N.J. App. Div. 2002)

(absentee ballots received late because of Post Office anthrax shutdown); *Obama for Am. v. Husted*, 697 F.3d 423, 427 (6th Cir. 2012) (early voting system with "inconsistent deadlines" owing to a legislative "mistake" deprived certain persons of right to vote early in the days preceding the election).

Here, by contrast, no would-be voter lost the opportunity to register to vote or submit his or her ballot. Plaintiffs nowhere allege that any Florida law or election official impeded any person from either registering to vote or casting a vote, whether in person, by mail, or otherwise. And those ballots were processed and the votes were counted in the same way that ballots are processed and votes are counted at every election. Plaintiffs have accordingly failed to allege any burden on the right to vote—let alone an outright denial.

And, as this Court has held, when "the right to vote is not burdened at all, then rational basis review applies." *Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *6 (N.D. Fla. Oct. 16, 2016) (citing *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012)). Under rational basis review, "a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993)).

Plaintiffs do not even attempt to argue that Florida's recount deadlines lack any conceivable basis. Nor could they. The deadlines serve a number of important functions. They ensure that elections are certified before the Florida Legislature is required to convene by the Florida Constitution, and they provide ample time for post-certification challenges under Section § 102.168, Florida Statutes. The Florida Legislature has amended the deadlines many times, and in doing so, it has conscientiously considered and reconsidered how to structure the "Time, Place and Manner" of federal and state elections consistent with its duty under the federal and Florida Constitutions. *See* U.S. Const. Art I, § 4; Fla. Const. Art. VI. There can be no serious argument that the recount deadlines lack a rational basis.

Even if this Court were to instead apply the "flexible standard" of review for state laws that do burden voting rights, the recount deadlines easily survive Plaintiffs' challenge. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Under this "flexible standard," a "court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule." *Id.* (quoting *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 (2008)). A statute or regulation that "imposes a 'severe' burden must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). But "'reasonable, nondiscriminatory

restrictions' that impose a minimal burden may be warranted by 'the State's important regulatory interests.'" *Id.* (quoting *Anderson*, 460 U.S. at 788). "However slight [the] burden may appear, it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Id.* (quoting *Crawford*, 553 U.S. at 191). In short, the court must "weigh[] the burden imposed on voters against the interests of the state." *Id.*

Plaintiffs' challenges fail even under this flexible standard. The "burden imposed" by Florida's recount deadlines (assuming that it is any burden at all) is exceedingly "slight." Again, Plaintiffs do not contend that any eligible voter was unable to cast a ballot in the general election on November 6 and have it included in the initial tabulation returned on Saturday November 10. They argue instead that votes "that would be counted in the course of a recount" will be "ignored" if the applicable county is "unable to complete the recount by th[e] arbitrary deadline" established by the Florida Election Code. Mem. at 3 (quoting Fla. Stat. § 102.112(3)).

Florida's pre-established deadlines for ending any recount are "reasonable, nondiscriminatory restrictions" that at most impose a minimal burden incident to the regulation of elections. *See Common Cause/Georgia*, 554 F.3d at 1352 (quoting *Anderson*, 460 U.S. at 788). Indeed, the Eleventh Circuit all but held as much in a similar challenge to Florida's recount system just a few years ago. In *Wexler v.*

*Anderson*, plaintiff voters lodged equal protection and due process challenges against Florida's vote-collecting mechanisms and recount procedures. 452 F.3d 1226, 1231 (11th Cir. 2006). The plaintiffs argued that, due to differences in voting technology, certain "residual voters," *i.e.*, voters who cast undervote or overvote ballots, would have no "opportunity to have their residual votes reviewed in a meaningful way in certain very close elections." *Id.* at 1231. As a result, it was possible that, if the voting "machine failed to record the vote due to voter mistake, human error, or system error," the residual voter's vote would not be accurately counted. *Id.*

The Eleventh Circuit began by pointing out the plaintiffs' "fundamental error," which was "one of perspective." *Id.* As the Eleventh Circuit explained, "[b]y adopting the perspective of a residual voter," the plaintiffs had "avoided the question that is of constitutional dimension." *Id.* That question was whether Florida's vote-collecting mechanisms made it "less likely" that voters would be able to "cast an effective vote" in the first instance. *Id.* Because nothing about Florida's vote-collecting mechanisms or recount procedures implicated that question, the Eleventh Circuit held that, "if [the plaintiffs] were burdened at all, that burden is the mere possibility that should they cast residual ballots, those ballots will receive … inferior treatment in the event of a manual recount." *Id.* at

1232. The Eleventh Circuit held that this was a minimal burden "borne of a reasonable and nondiscriminatory regulation." *Id.*

These "minimal burdens" are constitutionally permissible so long as they are "justified by the State's important regulatory interests." *Id.* (quoting *Burdick*, 504 U.S. at 434); *see also id.* at 1232 (States "are entitled to burden" the right to vote "to ensure that elections are fair, honest and efficient."). Florida has ample justification for its recount deadlines.[3] First and foremost, the deadlines are necessary to ensure that all elections are certified before the date at which the Florida Constitution requires the Florida Legislature (including its newly elected members) to convene. Fla. Const., Art. III, § 3(a). The present deadline already cuts close to the constitutional requirement—the legislative session begins fewer than 48 hours after the final deadline for counties to report their results to the Secretary. *Compare* Fla. Const., Art. III, § 3(a), *with* Fla. Stat. § 102.112. The People of Florida, of course, have the prerogative to determine when their legislative body convenes. That is a compelling State interest.

Second, the recount deadlines ensure that post-certification contests to the result of any election may begin and end in relatively short order. *See* Fla. Stat.

---

[3] The Supreme Court's decision in *Anderson* requires a state to identify the interests that it seeks to further by its regulation, but *Anderson* does not require any evidentiary showing or burden of proof to be satisfied by the state government." *Common Cause/Georgia*, 554 F.3d at 1353.

§ 102.168. These election contests cannot begin until the election results are certified. *Id.* If that does not happen until weeks after the election, it could hamstring both the Florida Legislature and the Florida executive and judicial branches. As we look ahead to the 2020 elections, because federal law sets deadlines by which presidential electors must meet, 3 U.S.C. §§ 5, 7, any lingering challenges or constitutional right found to easily extend these deadlines also could jeopardize Florida's right to elect the next President. Finally, delayed challenges could deprive Floridians of their representation in Congress. The detailed provisions of Florida's election-contest statute—Section 102.168—ensure that "[m]isconduct, fraud, or corruption," along with other ills, do not taint Florida's electoral process. By seeking to delay the certification of the votes, Plaintiffs only undermine their (and all other Floridians') right to obtain these remedies.

Plaintiffs entirely ignore these important interests, quipping that "there is nothing magic about" the deadlines. Mem. at 12. As shown above, nothing could be further from the truth. Rather than look to Florida's interest, Plaintiffs ground their argument that the deadlines are arbitrary in the fact that there is no federal law requiring elections for the U.S. Senate to be certified at a particular time. Mem. at 20. Similarly, Plaintiffs point out that other States lack deadlines for the recounts they offer. Mem. at 21. Plaintiffs fail to note, however, that many states do not offer recounts at all, *see infra* at 22; nor do they reckon with the fact that eight

other states have election certification deadlines the same as or shorter than Florida's (which the Plaintiffs conclude are "extraordinarily compressed" and "entirely arbitrary", Mem. 10, 22). Plaintiffs' arguments about federal deadlines or deadlines in other States demonstrate that their focus is misdirected.

The question is not whether federal law requires certifications at a particular time, still less what other States do, but whether Florida has properly exercised its authority and duty under the Elections Clause to "regulate the Time, Place and Manner" of congressional elections. U.S. Const. art. I, § 4. The Supreme Court has consistently "recognized the bre[a]dth of those powers." *Roudebush*, 405 U.S. at 24–25. The Elections Clause's "comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, *counting of votes*, duties of inspectors and canvassers, *and making and publication of election returns*; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved." *Id.* (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932) (emphases added)). The Florida Legislature has the prerogative under the Elections Clause to offer or not offer a recount procedure. Nothing about the way that Florida has fashioned its recount procedure impairs the right to vote.

**2. The Recount Deadlines Do Not Deny Equal Protection.**

The right to vote and to have one's vote counted does not include a right to have one's vote *re*-counted. *See Roudebush*, 405 U.S. at 24–25 (whether to hold a "recount is … within the ambit of the broad powers delegated to the States" by the Elections Clause). Three states (Hawaii, Illinois, and Mississippi) have no recount process; 27 allow a recount only if a candidate pays for it. *See* National Association of Secretaries of State, "State Election Canvassing Times and Recount Thresholds" (October 2018).[4] *See also Stein v. Cortes*, 223 F. Supp. 3d 423, 438 (E.D. Pa. 2016) ("The right to have one's vote counted does not, however, encompass the right to have one's vote verified through a mandatory statewide recount.").

In 2000, the U.S. Supreme Court remedied equal protection violations in Florida by *stopping* a statewide recount. *See Bush v. Gore*, 531 U.S. 98, 110–11 (2000). In *Bush v. Gore*, the Florida Supreme Court had held that the exclusion of thousands of "undervote" ballots from the election results, without a manual review of those ballots for any "clear indication of the intent of the voter," was unlawful. *See Gore v. Harris*, 772 So. 2d 1243, 1253 (Fla. 2000). But the cure was worse than the disease, as the U.S. Supreme Court concluded. By ordering a statewide recount without procedural safeguards or meaningful, uniform standards

[4] *See* state recount law profiles, https://ceimn.org/searchable-databases/recount-database/hawaii; https://ceimn.org/searchable-databases/recount-database/illinois; https://ceimn.org/searchable-databases/recount-database/mississippi.

for determining voter intent, the Florida Supreme Court had "ratified" the very "uneven treatment" it was attempting to correct. *Bush v. Gore*, 531 U.S. at 107. In light of the impracticability of an accurate *and timely* recount that would protect the constitutional rights of *all* Florida voters—not just those who had cast "undervote" ballots, or those in certain counties—the Supreme Court ordered an end to the recount. *Id.* at 111.

This dispute picks up where *Bush v. Gore* left off. Though Florida has made significant changes to its election laws and rules since 2000, the State still provides for automatic recounts of close races unless disclaimed by the losing candidate. *See* Fla. Stat. § 102.141(7)(a). And as the past eight days have shown, it will not always be possible to conduct those recounts within the time limits mandated by State law. The plaintiffs argue that Florida's time limits serve no legitimate state interest and are effectively arbitrary. Yet the Florida Constitution requires the state legislature to convene on Tuesday, less than 48 hours after Sunday's certification of results from the county Supervisors of Elections. Fla. Const., Art. III § 3(a). It is not arbitrary for state law to require election disputes to be resolved by the time the state Constitution requires the legislature to convene. On the contrary, it is hard to imagine a more compelling interest.

Moreover, rules governing elections, including recount procedures and deadlines like Florida's, are an essential component of the state's "active role in

structuring elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). The State's role as a regulator of elections applies equally to state and federal elections. *See* U.S. Const. Art. I, § 4 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."). And while the regulation of elections necessarily imposes some burdens on the right to vote, "[w]hen a state election law imposes only 'reasonable, nondiscriminatory restrictions' upon voters' rights, the 'State's important regulatory interests are generally sufficient' to sustain the regulation." *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006) (quoting *Burdick*, 504 U.S. at 434).

Courts have consistently rejected equal protection challenges to reasonable state election regulations. In *Wexler v. Anderson*, the Eleventh Circuit rejected an equal protection challenge to Florida's approval of touchscreen voting machines, holding this was a legitimate exercise of its interest in regulating elections, even though the machines' lack of a paper audit trail made recounts impossible. 452 F.3d at 1232–33. In *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1379–80 (S.D. Fla. 2004), the court rejected an equal protection challenge to the state's refusal to count absentee ballots postmarked on election day but received after the statutory 7:00 p.m. deadline. "State election laws which regulate the mechanics of voting are 'reasonable, nondiscriminatory restrictions' that are generally sufficient to justify

any restrictions imposed by the election laws," the court explained. *Id.* at 1374 (quoting *Burdick*, 504 U.S. at 534). In *George v. Hargett*, the Sixth Circuit rejected an equal protection challenge to the method of counting votes for a Tennessee ballot initiative, holding that the state was entitled to determine, under its own laws, the appropriate procedure. 879 F.3d 711, 728–29 (6th Cir. 2018).

Further examples abound. *See, e.g.*, *Burdick*, 504 U.S. at 441 (1992) (Hawaii prohibition on write-in voting did not violate the Equal Protection Clause); *Democratic Nat'l Comm. v. Reagan*, 904 F.3d 686, 704 (9th Cir. 2018) (Arizona prohibition of third-party collection of absentee ballots, which affected thousands of voters, did not violate equal protection); *Lemons v. Bradbury*, 538 F.3d 1098, 1105–07 (9th Cir. 2008) (Oregon procedure for validating referendum petition signatures did not violate equal protection, notwithstanding some evidence of disparate application); *Valenti v. Lawson*, 889 F.3d 427, 430 (7th Cir. 2018) (Indiana law forbidding registered sex offenders to enter polling places did not violate equal protection); *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (California law permitting but not requiring counties to mail absentee ballots to all registered voters did not offend equal protection, even though it resulted in disparate treatment of voters based on county of residence).

Florida's recount deadlines fall within the heartland of its authority and responsibility to regulate the "Time, Place, and Manner" of elections. Moreover,

since Florida (like most other States) has opted to hold federal and state elections on the same day, and because the Florida Constitution requires the Legislature to convene less than six days from now, it is imperative that the results of last Tuesday's election be determined and certified within the time allotted by law. The deadlines the state has chosen in service of that compelling interest should be enforced, and Plaintiffs' arguments to the contrary are unlikely to succeed.

### B. Plaintiffs Fail To Show That They Will Suffer Irreparable Harm Or That The Balance Of Hardships And The Public Interest Support Injunctive Relief.

Even if Plaintiffs could establish a substantial likelihood of success on the merits, they must also demonstrate that they will be irreparably harmed in the absence of an injunction and that the balance of hardships and the public interest favor injunctive relief. *See GeorgiaCarry.org*, 788 F.3d at 1322; *United States v. Florida*, 870 F. Supp. 2d at 1348. Here too, Plaintiffs' arguments fall short, and because they cannot "clearly carr[y] [their] burden of persuasion on each of these prerequisites," Plaintiffs' motion must be denied. *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001).

#### *1. The plaintiffs have not established that they will suffer irreparable harm if the recount deadlines are enforced.*

It is at best debatable, for three independent reasons, whether Plaintiffs will be irreparably harmed absent an injunction extending the recount deadlines. First, if the recount deadlines are enforced and Bill Nelson loses the election, Florida law

still provides a remedy for "any unsuccessful candidate …, any elector qualified to vote in the election … [or] any taxpayer" to sue within ten days of certification and have the results set aside. Fla. Stat. Ann. § 102.168; *see supra* at 19. The presence of this post-certification remedy undercuts any notion that Plaintiffs' alleged harm is truly irreparable.

Second, neither Bill Nelson for U.S. Senate nor the DSCC has explained where they derive standing to assert the interests of "some eligible Florida voters, including Plaintiffs' supporters" who they claim will be "disenfranchised" if the recount deadlines are enforced. Nor has either Plaintiff identified any member whose interests they might be able to assert through associational standing. Thus, although Plaintiffs allege that *someone* is at risk of irreparable harm, they have not carried—let alone "clearly carried"—their burden to establish that *they* are imperiled.

Third, even if one of Plaintiffs could establish associational standing, and even if they could thereby assert the rights of a Florida-resident member, that resident would have to reside in and have cast a ballot in one of the counties that purportedly will not have time to finish a recount without an extension of the deadlines and have been an undervote or overvote. If Plaintiffs could establish a causal connection in this way, between the enforcement of the recount deadlines and the potential discounting of a particular vote, they might plausibly have

satisfied the irreparable-harm requirement. But Plaintiffs have not even attempted to make this connection. Instead, they rely on generalities about what might happen to "some eligible Florida voters" who might not have had undervotes or overvotes manually reviewed in the absence of an injunction. This falls far short of their burden. *See Gill*, 138 S. Ct. at 1929 ("a person's right to vote is individual and personal in nature" and constitutional standing requires a showing that the alleged harm "affects the plaintiff in a personal and individual way").

2. *The balance of equities and the public interest weigh strongly against granting the injunction.*

The balance of equities and the public interest also plainly favor adherence to the recount deadlines and denial of Plaintiffs' motion. These factors "merge" when the government is the opposing party—as here, where the injunction is sought against the Florida Secretary of State and other state officials. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Florida has the authority and the obligation to ensure that federal elections in the state are conducted fairly and efficiently. Florida's laws governing recounts, including the deadlines for completing recounts, represent the Legislature's careful balancing of the need to accurately tabulate election returns against the need to achieve a final and certain result in a timely fashion.

Against the weighty public interest of quickly resolving election disputes, Plaintiffs assert the interests of an unknown number of voters who may have cast

valid ballots that tabulation machines detected as undervotes or overvotes . These "residual voters," Plaintiffs claim, may never have their votes tallied (if any valid vote can even detected one those ballots for races subject to a manual count when subjected to the human eye) if certain counties are unable to complete their recounts. But "Plaintiffs' fundamental error is one of perspective," as the Eleventh Circuit has explained before on similar facts. *See Wexler*, 452 F.3d at 1231. "By adopting the perspective of the residual voter, they have avoided the question that is of constitutional dimension: Are voters in [certain] counties less likely to cast an effective vote than voters in [other] counties?" *Id*. In *Wexler*, the question was whether technological differences between counties—some of which used "touchscreen" voting machines while others used "optical scan" machines—effected an equal protection violation. *Id.* The answer was no, and so too here.

When the election results are certified, every valid ballot cast will have been reviewed, either by hand or by machine, and some more than once. All the Constitution requires is *fair* elections, not *perfect* elections. To have a fair and orderly election—and a fair an orderly recount, if a State exercises its discretion to have recounts—there necessarily must be deadlines. Election processes must have a definitive end.

The Florida Legislature reasonably concluded that having orderly elections with fixed deadlines is better than providing discretion for officials to set their own

deadlines or break them on an ad hoc basis, or permitting courts to override the mandates and decisions of elected officials in the heat of an election contest once partisan lines have been drawn, creating the very legitimacy questions that courts strive to avoid to ensure public confidence in elections. The balance of equities and the public interest therefore weigh strongly against injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Intervenors certifies that this Opposition contains 6,857 words.

Respectfully submitted,

/s/ *Andy Bardos*

R. Eric Bilik (Fla. Bar No. 0987840)
ebilik@mcguirewoods.com
Kimberly T. Mydock (Fla. Bar No. 100571)
kmydock@mcguirewoods.com
McGuireWoods LLP
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

Andy Bardos (FBN 822671)
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
george.levesque@gray-robinson.com

John D. Adams *
jadams@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 E. Canal Street
Richmond, Virginia 23219-3916
Tel: (804) 775-1000
Fax: (804) 775-1061
* *provisionally admitted pro hac vice*

Jonathan F. Cohn *
Eric D. McArthur *
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
Telephone: 202-736-8000
emcarthur@sidley.com
jfcohn@sidley.com
* *provisionally admitted pro hac vice*

Jason Torchinsky (VA Bar #47481)
Holtzman Vogel Josefiak Torchinsky, PLLC
45 North Hill Drive, Suite 100
Warrenton, Virginia 20186
Telephone: 540-341-8808
jtorchinsky@hvjt.law

*Attorneys for the National Republican Senatorial Committee*