**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE, *et al.*,

*Plaintiffs*,

vs. CASE NO.: 4:18-cv-00528-MW-CAS

KEN DETZNER, in his official capacity
as Florida Secretary of State, *et al.*,

*Defendants.*
_______________________________________/

**FLORIDA ELECTION CANVASSING COMMISSIONS' BRIEF IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

A district court may issue a preliminary injunction only if the moving party shows "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015). "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to

each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation marks and alteration omitted).

Plaintiffs have not satisfied any of those four criteria. Accordingly, their motion should be denied.

## I. Plaintiffs Have Failed To Show A Substantial Likelihood Of Success On The Merits.

Plaintiffs advance two theories that, in their view, render Florida's recount deadlines unconstitutional. Neither is meritorious.

### A. Florida's Recount Deadlines Do Not Impermissibly Burden The Right To Vote.

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Indeed, "there *must* be a *substantial* regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974) (emphases added). Because "[e]lection laws will invariably impose some burden upon individual voters," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983), the U.S. Supreme Court has made clear that "the State's important regulatory interests are generally sufficient to justify" voting restrictions, *id.*, so long as they are "reasonable" and "nondiscriminatory," *Burdick v. Takushi*, 504 U.S. at 434.

The recount deadlines challenged by Plaintiffs are reasonable, neutral, nondiscriminatory, and critical to ensuring that elections in Florida are conducted and concluded in an orderly, timely, and reliable manner. "Because" deadlines "only relate[] to the mechanics of the electoral process," the "correct standard to be applied . . . is whether Florida's important regulatory interests are sufficient to justify the restrictions imposed on their First and Fourteenth Amendment rights." *Id.* Indeed, courts of this State have held that "the State's interests in ensuring a fair and honest election and *to count votes within a reasonable time* justifies the light imposition on Plaintiffs' right to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1376 n.17 (S.D. Fla. 2004) (emphasis added).

The Supreme Court has emphasized that "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Anderson*, 460 U.S. at 788. The deadlines imposed by Florida law are critical and necessary for maintaining this integrity. For example, candidates elected to offices in Florida's executive branch must be officially certified before January 8, 2019, when they must take office; if they do not, under Florida's Constitution, Florida's Legislature must select new executive officers, thereby thwarting the will of the voters. Likewise, U.S. Senators are seated in early January. Thus, the statutory deadlines are reasonably calculated to ensure an orderly transition of power, particularly given that under § 102.168, the officially

certified results on November 20, 2018, may be contested, a process that may take up much of December, if not more, and elected candidates require time to effectively transition into their new positions. Simply put, they are neutral, reasonable, and fundamental to the maintenance of an orderly electoral process. They do not impermissibly burden the right to vote, and Plaintiffs' argument to the contrary should be rejected.

**B. Florida's Recount Deadlines Do Not Subject Voters to Disparate Treatment.**

Plaintiffs also allege that "the application of deadlines for completing the recount process and certifying the official election results will subject similarly situated voters to differing standards based on their county of residence," and assert that this violates the Equal Protection Clause. But this ignores that all counties are required to meet the identical deadline for completing the recount process and certifying the election results. At most, Plaintiffs' claim can be characterized as a disparate-impact claim—that the application of a uniform, facially neutral deadline to all 67 counties may result in some differences in how votes in particular counties are counted. But a "disparate impact" does not establish an equal-protection violation. *See, e.g., Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 42 (2012) ("Although disparate impact may be relevant evidence of . . . discrimination . . . such evidence alone is insufficient [to prove a constitutional violation] even where the Fourteenth Amendment subjects state action

to strict scrutiny."); *Morrissey v. United States*, 871 F.3d 1260, 1272 n.10 (11th Cir. 2017) (explaining that a claim that a statute's "burden falls more heavily on [the plaintiff] than on" others, while sufficient under some civil rights statutes, . . . will not support an equal protection claim."); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976); *Hand v. Scott*, 888 F.3d 1206, 1210 (11th Cir. 2018) (citing *Hunter v. Underwood*, 471 U.S. 222, 227-28 (1985); *Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). Nor do Plaintiffs allege any facts establishing that the deadlines at issue harm members of any protected class more than other groups. *See United States v. Houston*, 456 F.3d 1328, 1336 (11th Cir. 2006). Thus, Plaintiffs have also failed to establish a substantial likelihood of success on Count II of their Complaint.

## II. Plaintiffs Have Failed To Show That The Relief Sought Is Necessary To Prevent Irreparable Injury Or That The Threatened Injury Outweighs The Harm The Preliminary Injunction Would Cause.

For the reasons discussed in the brief in opposition to Plaintiffs' motion for a preliminary injunction in *Democratic Executive Committee of Florida v. Detzner*, No. 4:18-cv-520, ECF No. 31 (N.D. Fla. Nov. 12, 2018), Plaintiffs cannot establish the other three prongs of the standard for a preliminary injunction. Given that Defendant was ordered to file this response in less than twenty-four hours (and on the same day it was served with the complaint), Defendant respectfully objects to the briefing schedule and reserves the right to make arguments not raised in this

response. For the record, counsel for Defendant notes that, due to counsel's (and his team of five attorneys') involvement in two other pending election cases—which, just today, involved attending an long afternoon hearing before this Court, preparing for an evidentiary hearing this Court set for tomorrow morning with less than 24-hours' notice, drafting briefs, and consulting with clients throughout the process—counsel was not made aware of the 10:00 pm deadline until approximately 8:00 pm today. Defendant has done its best to comply with the court's deadline, but respectfully objects to an order requiring Defendant to brief delicate and important constitutional issues in less than one business day.

## III. Should The Court Enjoin Florida's Recount Deadlines, The Attorney General Respectfully Requests A Stay Pending An Appeal to the Eleventh Circuit.

Should the Court disagree and enjoin Florida's recount deadlines, the Attorney General respectfully requests, pursuant to Rule 8(a)(1) of the Federal Rules of Appellate Procedure, a stay pending appeal to the Eleventh Circuit. In deciding whether to grant a stay, the Court considers the same factors for issuance of a preliminary injunction—"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors are the "most critical." *Id*.

Based on the foregoing analysis, the Attorney General maintains that she is likely to succeed on the merits before the Eleventh Circuit. The State will, moreover, experience irreparable injury should the Court decide not to maintain the status quo pending appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs' emergency motion for a temporary restraining order and a preliminary injunction should be denied.

Respectfully submitted,

PAMELA BONDI
Attorney General

/s/ *Edward M. Wenger*
EDWARD M. WENGER
Chief Deputy Solicitor General
Fla. Bar. No. 85568
Edward.Wenger@myfloridalegal.com

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Tel.: (850) 414-3300
Fax: (850) 413-7555

## **RULE 7.1(F) CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(F), I certify that according to the word count feature of the word-processing system used to prepare this document, the document contains X words.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by CM/ECF only to Counsel of Record this 14th day of November, 2018.

*/s/ Edward M. Wenger*
Edward M. Wenger