UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE and
BILL NELSON FOR U.S. SENATE,

    *Plaintiffs*,

v.                              Case No.  4:18cv528-MW/CAS

KENNETH W. DETZNER, in his official
capacity as Secretary of State,
the FLORIDA ELECTIONS CANVASSING
COMMISSION, and RICK SCOTT, PAMELA
BONDI, and JIMMY PATRONIS, in their
official capacity as members of the
Florida Elections Canvassing
Committee,

    *Defendants*.
_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This Court has considered, after a hearing, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 3. Plaintiffs' motion is **DENIED**.

The Florida Election Code sets out procedures and deadlines for the conduct and tabulation of elections in Florida. These statutes allow for the extension of the official returns reporting deadline only in the case of an "emergency." *See* § 102.112(4), Fla. Stat. ("If the returns are not received by

1

the department due to an emergency, as defined in § 101.732, the Elections Canvassing Commission shall determine the deadline by which the returns must be received."). The Florida legislature chose to define emergency narrowly—only as an event that "results or may result in substantial injury or harm to the population or substantial damage to or loss of property." § 101.732(3), Fla. Stat. The emergency exception does not apply in this case, where the delay is the result of outdated and malfunctioning vote-counting technology.

The question then becomes whether the statutory scheme of the Florida Election Code, which defaults to the acceptance of unofficial election returns if a recount cannot be completed by the official reporting deadline, is constitutionally tenable when it means that the votes of citizens in 66 counties will be recounted while those in the one remaining county will not.

Consider this hypothetical. Voter Alice lives in Sunshine County with a close state house race that is going to a recount. Sunshine County has brand new voting machines. Voter Alice's vote is recounted on time. Voter Bob lives in Hurricane County with a close state house race that is going to a recount. Hurricane County has faulty voting machines, making it difficult to conduct multiple recounts. Voter Bob's vote is not recounted on time, if it is recounted at all. The issue is whether it is constitutionally tenable for such arbitrary and

disparate treatment to result from the quirks of the complex rat's nest of Florida's election administration. It likely is not.

By cosmic coincidence (or curse), it is *Bush v. Gore* that is most instructive in this Florida recount dispute. It is a foundational tenet of our democracy that "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000). The Supreme Court emphasized the necessity of a "minimum requirement for nonarbitrary treatment of voters necessary to secure the fundamental right" to vote. *Id.* at 105. The Florida Supreme Court's recount ruling—which created a patchwork quilt of recount standards—was "inconsistent with the minimum procedures necessary" to avoid an equal protection violation. *Id.* at 109.

The inverse is at issue here. The state's recount provision will lead to votes and election results in one county being "ignored" while other counties' vote and results will not be. § 102.112(3), Fla. Stat. This disparate treatment arguably runs afoul of the Equal Protection Clause because it is an arbitrary distinction based on a voter's location. *See Reynolds v. Sims*, 377 U.S. 533, 563 (1964) ("Weighting the votes of citizens differently, by any method or means, merely because of where they happen to reside hardly seems justifiable."); *see*

*also Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1185–86 (11th Cir. 2008) (Barkett, J., concurring in part, dissenting in part) (explaining equal protection violation when "Florida's matching scheme results in the arbitrary and disparate treatment of its citizens based on their county of residence").

"When a state adopts an electoral system, the Equal Protection Clause of the Fourteenth Amendment guarantees qualified voters a substantive right to participate *equally* with other qualified voters in the electoral process." *Id.* at 1185 (emphasis in original) (citing *Reynolds*, 377 U.S. at 566 *and Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966)). "Having granted its citizens the right to vote, Florida must not only allow qualified voters to participate equally in elections, it must also ensure that qualified voters are given an *equal opportunity* to participate in elections." *Id.* (emphasis in original). This same logic likely extends to post-election processes. Florida grants its citizens the right to vote and have their votes recounted under certain circumstances—but it also permits certain votes from being "ignored" when arbitrary deadlines pass. § 102.112(3), Fla. Stat. This statutory authorization to "ignore" certain results, despite mandatory recounts, arguably denies voters an equal opportunity to participate in the full electoral process due to unknowable vagaries like, for example, faulty machines.

In short, the Florida recount deadline seemingly "value[s] one person's vote over that of another," *Bush*, 531 U.S. at 104, because it arbitrarily and disparately treats some voters differently because of their location and without taking into account the unpredictable circumstances of each election cycle.

But this Court does not need to reach this constitutional analysis because, as noted on the record during this morning's hearing, there is a complete dearth of evidence before this Court concerning the status, progress, or expected completion of the ordered recounts in Palm Beach County. In considering whether to grant the extraordinary relief of a preliminary injunction, the Court is required to balance the equities. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (detailing the four elements required for a preliminary injunction). This balancing is effectively impossible without an understanding of the state and limitations of the current ongoing process.

This Court must be able to craft a remedy with knowledge that it will not prove futile. It cannot do so on this record. This Court does not and will not fashion a remedy in the dark.

Accordingly,

**IT IS ORDERED:**

Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 3, is **DENIED**.

**SO ORDERED on November 15, 2018.**

<u>s/Mark E. Walker</u>
**United States District Judge**
